# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**CARLOS BONETTI,**

          **Plaintiff,**

**-vs-**                                                        Case No. 6:07-cv-1335-Orl-31GKJ

**EMBARQ MANAGEMENT COMPANY,**

          **Defendant.**

_____

# ORDER

This matter came before the Court without oral argument upon consideration of the parties' Renewed Joint Motion to Approve Settlement Agreement (the "Motion") (Doc. 50), United States Magistrate Judge Gregory J. Kelly's Report and Recommendation regarding same (Doc. 51), and Plaintiff's Objection to the Report and Recommendation (Doc. 52).

## I. Background

On August 24, 2007, Plaintiff filed his Complaint asserting, *inter alia*, a claim for unpaid overtime compensation under the Fair Labor Standards Act of 1938 (the "FLSA"). *See generally* 29 U.S.C. §§ 201 to 209. In doing so, his case became one of the nearly 2,500 FLSA cases that were filed in federal court throughout the Middle District of Florida between January 1, 2007 and June 1, 2009.[1]

Indeed, Plaintiff's case is typical of most FLSA cases that have come before the Court in recent years. Plaintiff's alleged damages were relatively small (less than $10,000) and Plaintiff

---

[1] Within the Orlando Division alone, nearly 1,000 FLSA cases were filed during this time.

ultimately agreed to settle for much less ($3,000). After nearly one and one-half years of procedural wrangling, disputes over coverage and the statute of limitations, and exhaustive negotiations, however, the Court now has before it a recommendation to modify or reject the parties' settlement agreement.

The Report and Recommendation is not unique. Following binding, as well as persuasive, Eleventh Circuit case law and well-established procedures in the Orlando division regarding FLSA settlements, Judge Kelly's detailed Report and Recommendation carefully scrutinizes the parties' settlement agreement and, in particular, the attorneys' fees to be awarded to Plaintiff's counsel. In pertinent part, the Report and Recommendation notes:

> As the Court interprets the *Lynn Foods* and *Silva* cases, where there is a compromise of the amount due to the plaintiff, the Court should decide the reasonableness of the attorneys' fees provision under the parties' settlement agreement using the lodestar method . . . . [A]ny compensation for attorneys' fees beyond that justified by the lodestar method are unreasonable [and the settlement should be rejected] unless exceptional circumstances would justify such an award.

(Doc. 51 at 4). After reviewing the market for attorneys' fees in the Orlando area, the complexity of the work involved, Plaintiff's counsel's fee awards in similar cases, and counsel's billing sheets and time records, Judge Kelly recommends that the fees awarded to Plaintiff's counsel be reduced by $385 and that this sum should be awarded to Plaintiff. Although the parties agreed that Plaintiff should receive $1,250 in unpaid overtime compensation, $1,250 in liquidated damages, and $500 in consideration of a general release of his claims, and that Plaintiff's counsel should receive a fee of $2,500, Judge Kelly recommends that the Court "re-allocate" these funds and modify the parties' settlement agreement as follows:

(1) $1,250 to Plaintiff for unpaid overtime compensation;

(2) $1,250 to Plaintiff for liquidated damages;

(3) $385 to Plaintiff for the excess amount above the lodestar; and

(4) $2,114.50 to Plaintiff's counsel.

(Doc. 51 at 7).[2]

Plaintiff's counsel objects to the Report and Recommendation. While taking exception to his hourly rate, Plaintiff's counsel also contends that the Court should not modify or alter an otherwise valid, negotiated settlement agreement that reflects a careful and deliberate compromise of the parties' dispute. (Doc. 52).

The Court addresses the Report and Recommendation and Plaintiff's objections thereto, *infra*. In doing so, the Court attempts to resolve a recurring problem: the extent to which it should inject itself into the process of approving FLSA settlements.

The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

## II. The Fair Labor Standards Act

### A. History and Enforcement

Originally enacted in 1938, the FLSA was meant "to protect all covered workers from substandard wages and oppressive working hours, 'labor conditions [that are] detrimental to the maintenance of the minimum standard of living necessary for health, efficiency and general well-being of workers.'" *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 739 (1981) (quoting 29 U.S.C. § 202(a)). In contrast to prior legislation that was aimed at reforming general work conditions by promoting collective action, "the FLSA was designed to give specific

---

[2]The Report and Recommendation does not address the $500 in consideration of Plaintiff's general release.

-3-

minimum protections to *individual* workers and to ensure that *each* employee covered by the Act would receive '[a] fair day's pay for a fair day's work.'" *Id.* (citations omitted). These individual protections include, *inter alia*, the right to receive a minimum wage and overtime compensation at a rate not less than one and one-half times an employee's regular rate of pay for hours worked in excess of forty per week. 29 U.S.C. §§ 206(a) and 207(a)(2).

Enforcement of the FLSA is quite broad. In addition to empowering the Secretary of the Department of Labor to enforce the FLSA, 29 U.S.C. § 216(c), Congress also afforded individual employees access to the courts and armed them with a private cause of action. 29 U.S.C. § 216(b); *see also Barrentine*, 450 U.S. at 739. Any aggrieved employee may bring a claim under the FLSA "in any Federal or State court of competent jurisdiction." *Id.* There are no exhaustion or administrative requirements and, unlike some federal statutory rights, there is no jurisdictional minimum. *Cf.* 15 U.S.C. § 2310(d)(3)(b) (imposing $50,000.00 jurisdictional minimum to assert Magnuson-Moss Warranty Act claims in federal court). Congress also provided an incentive to sue – liquidated (double) damages and attorneys' fees. 29 U.S.C. § 216(b).[3]

### B. The FLSA in the Middle District of Florida

The Middle District of Florida has experienced a large influx of FLSA litigation over the past few years. A Westlaw and LexisNexis search of FLSA case law reveals that a surprisingly large number of the published and unpublished district court decisions regarding the FLSA

---

[3] In pertinent part, 29 U.S.C. § 216(b) provides: "The court . . . shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action."

originate in this District. Indeed, nearly 2,500 FLSA cases were filed here in 2007 and 2008, and approximately 20% of all civil cases pending in this District are FLSA lawsuits.

To address the sheer volume of FLSA cases, the judges of the Orlando Division promulgated a separate scheduling order specifically tailored to FLSA cases. The FLSA Scheduling Order requires the parties, *inter alia*, to quickly produce all documents relating to the plaintiff's claims; directs the plaintiff to answer Court Interrogatories and provide a detailed accounting of his claim; mandates that the parties engage in a good faith settlement conference before filing a settlement report with the Court; and otherwise stays all discovery until all preliminary efforts at settlement have been exhausted.[4]

By requiring a timely exchange of discovery at the very outset of the litigation, the scheduling order encourages the parties to quickly resolve their case. And the FLSA Scheduling Order has largely been effective in this regard. Most FLSA cases now generally settle early-on in the litigation process. However, this gives rise to another issue: what is the proper role of the Court in approving these thousands of settlements?

### C. Court Approval of FLSA Settlements

In *Lynn's Food Stores, Inc. v. U.S. Dep't of Labor*, 679 F.2d 1350 (11th Cir. 1982) [hereinafter "*Lynn's Food*"], the Eleventh Circuit held that, unless supervised or brought by the Secretary of Labor, the settlement of an FLSA claim can only have binding, res judicata effect if the settlement is the product of adversarial litigation and is approved by the court. Specifically, the Circuit Court rejected the notion that a private employer could approach its unrepresented

---

[4] A blank copy of the Orlando Division's Standard FLSA Scheduling Order is attached hereto. The current Scheduling Order will have to be modified in accordance with this Order.

employees directly and enter into a private settlement agreement that would have preclusive effect in subsequent litigation. Relying mostly on two Supreme Court precedents that prohibited prospective waivers of employees' FLSA rights – *D.A. Schulte, Inc. v. Gangi*, 328 U.S. 108 (1946) and *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697 (1945) – the Circuit Court noted:

> There are only two ways in which back wage claims under the FLSA can be settled or compromised by employees. First . . . the Secretary of Labor is authorized to supervise payment to employees of unpaid wages owed to them. An employee who accepts such a payment . . . thereby waives his right to bring suit for both the unpaid wages and for liquidated damages, provided the employer pays in full the back wages.
>
> The only other route for compromise of FLSA claims is provided in the context of suits brought directly by employees against their employer under section 216(b) to recover back wages for FLSA violations.

*Lynn's Food*, 679 F.2d at 1352-53.

With respect to the second route, the Court went on to conclude:

Settlements may be permissible in the context of a suit brought by employees . . . because initiation of the action by the employees provides some assurance of an adversarial context. The employees are likely to be represented by an attorney who can protect their rights under the statute. Thus, when the parties submit a settlement to the court for approval, the settlement is more likely to reflect a reasonable compromise of disputed issues than a mere waiver of statutory rights brought by an employer's overreaching. If a settlement in an employee FLSA suit does reflect a reasonable compromise over issues, such as FLSA coverage or computation of back wages, that are actually in dispute; we allow the [court] to approve the settlement in order to promote the policy of encouraging settlement of litigation.

*Id*. at 1354.

In a subsequent, unpublished decision, the Eleventh Circuit appears to have held that, where the plaintiff and his counsel have entered into a contingency fee agreement, the court must "review the reasonableness of counsel's legal fees to assure both that counsel is compensated

adequately and that no conflict of interest taints the amount the wronged employee recovers under a settlement agreement." *Silva v. Miller*, 307 F. App'x 349, 351 (11th Cir. 2009) (unpublished) [hereinafter "*Silva*"].[5] On its face, the holding in *Silva* is limited to contingency fee agreements, where there is an inherent potential conflict between the economic interests of the lawyer and his client. *Id.* at 351-52.

### III. Analysis

The judges in the Orlando division have construed *Lynn Foods* as requiring court approval of any FLSA settlement which involves a compromise of the plaintiff's claims.[6] Broadly construed, a compromise would entail any settlement where the plaintiff receives less than his initial demand.[7] *Lynn Foods* supports this premise. But the question becomes, how does the Court fulfill its obligation to discern the reasonableness of an FLSA settlement?

Short of a bench trial, the Court is generally not in as good a position as the parties to determine the reasonableness of an FLSA settlement. Many factors may be in play as the parties negotiate a compromise that is acceptable to both sides. The parties may disagree as to the number

---

[5] Pursuant to 11th Cir. R. 36-2, "Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority."

[6] If the parties submit a stipulation stating that the plaintiff's claims will be paid in full, without compromise, there is no need for the Court to review the settlement. *See Mackenzie v. Kindred Hosps. E., LLC*, 276 F. Supp. 2d 1211, 1217 (M.D. Fla. 2003) (noting that *Lynn's Food* "addresses judicial oversight of 'compromises' of FLSA claims . . . . There is no need for judicial scrutiny where, as here, the defendant represents that it has offered the plaintiff more than full relief, and the plaintiff has not disputed that representation.").

[7] A settlement in which the plaintiff would receive every penny of the wages or overtime he originally claimed was due may nonetheless be seen as a compromise – if, for example, the plaintiff waves his right to recover liquidated damages – thereby requiring judicial approval.

-7-

of hours worked by the plaintiff, the plaintiff's status as an exempt employee, or the defendant's status as a covered employer. In certain cases, the Defendant may assert (or threaten to assert) a counterclaim arising from the employment relationship. If the parties are represented by competent counsel in an adversary context, the settlement they reach will, almost by definition, be reasonable.[8] Rarely will the Court be in a position to competently declare that such a settlement is "unreasonable."

Lacking the factual basis to question the reasonableness, per se, of the amount that would be paid to the plaintiff, the judges of this Court have instead focused on the element over which they have knowledge – the reasonableness of the fees that would be paid to the plaintiff's counsel. Thus, if a compromise is proposed for court approval, the Court, relying on *Silva*, routinely looks at the agreed payment to plaintiff's counsel as an element of the settlement package. Even if the parties agree on the amount of the fees to be paid to the plaintiff's counsel, the settlement will not be approved if the Court determines that the plaintiff's legal fees are "unreasonable." *See*, *e.g.*, *Shannon v. Saab Training USA, LLC*, Case No. 6:08-CV-803, 2009 WL 1773808 (M.D. Fla. June 23, 2009) (rejecting settlement agreement because plaintiff's counsel would be entitled to "too high" a fee and further noting that "no attorneys' fees in excess of the amount set forth as reasonable in this Order will be permitted by private agreement or otherwise"). This, in the Court's opinion, is wrong-headed and not required by the terms of the FLSA, its underlying policy objectives, or binding precedent.

---

[8]Such a transaction would conform to the widely accepted definition of "fair market value" – *i.e.*, "the price at which the property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or to sell and both having reasonable knowledge of relevant facts." *See*, *e.g.*, *U.S. v. Cartwright*, 411 U.S. 546, 551 (1973).

First, there is a significant question as to whether *D.A. Schulte, Inc. v. Gangi*, 328 U.S. 108 (1946) and *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697 (1945) – the bedrocks upon which *Lynn's Food* and *Silva* rest – are still apposite in light of various amendments to the FLSA in the last sixty-plus years. *See*, *e.g.*, *Martinez v. Bohls Bearing Equip. Co.*, 361 F. Supp. 2d 608 (W.D. Tex. 2005) (exhaustively reviewing the text and legislative history of the FLSA, as well as Supreme Court and Fifth Circuit precedents regarding settlements of FLSA claims, and concluding that a private release signed by an employee waiving his rights under the FLSA was valid and enforceable).

Second, and more importantly, the present approach to approving FLSA settlements rests on a tenuous assumption concerning the relationship between an attorney and his client. Specifically, it assumes that if the plaintiff's counsel receives a fee that is higher than what the Court deems reasonable, then the overall fairness of the settlement is adversely affected. This presupposes that a higher fee to the plaintiff's counsel was necessarily obtained at the plaintiff's expense.[9] In other words, this rationale assumes that any plaintiff's lawyer who negotiates a fee that is "unreasonable" in the Court's eye has breached his fiduciary and professional duty to his client. But, absent some objective basis for questioning counsel's conduct,[10] there is simply no reason for the Court to undermine the parties' agreement.

---

[9] Indeed, the Report and Recommendation in this case recommends that Plaintiff's counsel receive $385 less than his requested fee and that the Court reallocate these sums to Plaintiff.

[10] Such a basis might include, for example, evidence that the plaintiff will receive less money than was represented to the Court, due to an undisclosed contingency fee arrangement. The Court has encountered and condemned this practice in previous FLSA cases.

Lawyers are often faced with a conflict between their own economic interests and the welfare of their clients. This conflict arguably exists whenever contingent fee agreements are involved and is precisely what the Eleventh Circuit sought to address in *Silva*. Absent evidence to the contrary, however, the Court should assume that the plaintiff's lawyer has abided by his ethical obligations and avoided the temptation to place his own interest ahead of his client's.

With this in mind, the Court finds that the best way to insure that no conflict has tainted the settlement is for the parties to reach agreement as to the plaintiff's recovery before the fees of the plaintiff's counsel are considered. If these matters are addressed independently and seriatim, there is no reason to assume that the lawyer's fee has influenced the reasonableness of the plaintiff's settlement.

In sum, if the parties submit a proposed FLSA settlement that, (1) constitutes a compromise of the plaintiff's claims; (2) makes full and adequate disclosure of the terms of settlement, including the factors and reasons considered in reaching same and justifying the compromise of the plaintiff's claims; and (3) represents that the plaintiff's attorneys' fee was agreed upon separately and without regard to the amount paid to the plaintiff, then, unless the settlement does not appear reasonable on its face or there is reason to believe that the plaintiff's recovery was adversely affected by the amount of fees paid to his attorney, the Court will approve the settlement without separately considering the reasonableness of the fee to be paid to plaintiff's counsel. However, if the parties can only agree as to the amount to be paid to the plaintiff, the Court will continue the practice of determining a reasonable fee using the lodestar approach.

In the instant case, the parties represented to the Court that Plaintiff would receive a net recovery of $3,000 (comprised of $1,250 in overtime compensation, $1,250 in liquidated damages,

and $500 in consideration of his general release of his claims) and that Plaintiff's counsel would receive $2,500 in attorneys' fees and costs. (Doc. 50 at 3). The parties further represented that this case involved disputed issues regarding the computation of the number of hours that Plaintiff worked and the applicability of the statute of limitations. (Doc. 50 at 3). However, the Motion does not address whether Plaintiff's attorneys' fee was agreed upon separately and without regard to the amount paid to Plaintiff. Accordingly, the Court will require the parties to amend the Motion to address this point.

**IV. Conclusion**

Based on the foregoing, it is **ORDERED** that Plaintiff's Objection to the Report and Recommendation (Doc. 52) is **SUSTAINED**. The Court declines to adopt the Report and Recommendation (Doc. 51).

It is **FURTHER ORDERED** that the parties shall file an Amended Joint Motion to Approve Settlement Agreement that is consistent with this Order.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on August 4, 2009.

Copies furnished to:

Counsel of Record
Unrepresented Party
All Judges, Orlando Division

GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE